# SUPREME JUDICIAL COURT

#### FOR THE

### COUNTIES OF HAMPSHIRE, FRANKLIN AND HAMPDEN, SEPTEMBER TERM 1841, AT NORTHAMPTON.

PRESENT:

HON. LEMUEL SHAW, CHIEF JUSTICE.
HON. SAMUEL PUTNAM,
HON. SAMUEL S. WILDE, } JUSTICES.
HON. CHARLES A. DEWEY,

---

## PRESIDENT, DIRECTORS, &c. OF AMHERST BANK *vs.* LUTHER ROOT & others.

Where a magistrate in another State, to whom a commission to take a deposition was issued by this court, certified that the deponent made oath before him, that the deposition contained the truth, the whole truth, and nothing but the truth ; and it appeared that all the interrogatories and cross-interrogatories were put and answered ; it was held that the deposition was admissible in evidence, although it did not appear that the magistrate conformed to the seventh rule of the court, which was annexed to the commission.

A clerk of a court, who, in the course of his business, has often seen what he believed to be the official signature of A., as justice of the peace, and has certified the same as such, to the pension office, may be called to prove the handwriting of A., though he has never seen him write.

If a subscribing witness to a bond be interested at the time of attestation, and dead at the time of the trial, evidence of his handwriting is not admissible to prove the execution of the bond.

It is not necessary that there should be written evidence of the acceptance and approval of a cashier's bond, in order to render his sureties liable thereon ; and parol evidence is admissible that his bond was laid before the board of directors, and that they expressed themselves satisfied with it.

A cashier's bond is not void, as against the policy of the law, by reason of its being approved by a board of directors, some of whom had executed it as sureties.

In 1831, while *St.* 1828, *c.* 96, was in force — which provided that a cashier should retain his place until removed therefrom, or another should be appointed in his stead — a cashier was appointed, and gave bond for the faithful discharge of the duties of his office :  In 1832, he was re-appointed, but gave no new bond :  In 1836 and 1837, he was guilty of defaults, and his bond was afterwards put in suit.  *Held*, that

his sureties were liable on the bond, although it appeared from the records of the directors, that in 1831, and also in 1832, he was appointed " for the year ensuing." DEWEY, J. dissenting.

The sureties of a cashier are not exonerated from liability for his defaults, by reason of the neglect of the directors to examine, as required by the by-laws, into the state of the affairs of the bank.

In a joint action against a cashier and his sureties on his bond, the admissions and declarations of the cashier, as to his defaults, are evidence against the sureties.

DEBT on a bond, dated October 3d 1831, executed by Luther Root, as principal, and the other five defendants, as sureties, to secure the true and faithful performance, by the said Luther, of the duties of the office of cashier of the Amherst Bank. The defendants severally pleaded the general issue, and gave notice of the grounds of their defence. Trial before *Wilde*, J.

To prove the handwriting of Martin Root, one of the sureties, the plaintiffs offered the deposition of Elisha Root, taken in Vermont, under a commission issued from this court ; to which the defendants objected, on the ground that it did not appear by the certificate of the magistrate, or otherwise, that the deposition was taken conformably to the commission and to the seventh rule of the court, 24 Pick. 386. The magistrate's certificate was thus : " State of Vermont. Bennington County : Bennington, March 30, 1840. Then personally appeared the within named Elisha Root, and made solemn oath that the within and foregoing deposition, by him subscribed, contains the truth, the whole truth, and nothing but the truth, before me, Pierpont Isham, Justice of the Peace." After the superscribed direction to this court were these words : " The within deposition of Elisha Root was taken and sealed by me. Pierpont Isham, Just. Peace."

The objection was overruled, and the deposition was read.

The plaintiffs called Elijah Alvord (then clerk of this court) as a witness, to prove the handwriting of Charles Ccoley, another of the sureties. The witness testified that he had never seen said Cooley write, but that, in the course of his business, he had seen what he believed to be Cooley's official signature as a justice of the peace, and had certified the same, as such, to the pension office. The defendants objected to Alvord's competency

to testify to said surety's signature to the bond, but the objection was overruled, and the testimony of the witness was received.

The court received evidence of the handwriting of Nathaniel Smith, who appeared to be a subscribing witness to the bond — overruling the defendant's objection, that as said Smith was, at the date of the bond, and afterwards and until his death, a stockholder in the bank, he was not a competent attesting witness, and that, therefore, evidence of his signature was not admissible to prove the execution of the bond by the obligors.

There was no record or written evidence of any vote or act that the bond was to the satisfaction of the directors, or was accepted by them or by the stockholders. The plaintiffs called L. Boltwood as a witness, who testified that in October 1831, he was chosen a director of the bank; that in the course of a week afterwards, Luther Root was appointed cashier, and gave to the witness the bond now in suit, which the witness laid before the board of directors, at their next meeting, and they expressed themselves satisfied with it : That N. Smith and L. Sweetser were the only directors the witness recollected to have been present at that time ; and that the bond had been in the possession of the respective presidents, ever since. The defendants objected to the competency and sufficiency of this evidence to prove that the bond was accepted as satisfactory by the directors. This objection was overruled, and the jury were instructed, that this evidence, together with the plaintiffs' possession of the bond, was competent presumptive evidence, from which they might infer that the bond was to the satisfaction of the directors.

The defendants contended, that if the bond was duly executed and duly approved by the directors, yet it was in contravention of the policy of the law in virtue of which it was taken, and void — three of the directors, by whom it was to be approved, being (as was admitted) parties thereto, as sureties of Root, the cashier. This objection was overruled.

The defendants further contended that the bond was for one year only, or until the next annual meeting and choice of cashier, and did not cover the breaches assigned, which were all between

March 10th 1836, and January 5th 1838, inclusive. On this point, the defendants relied upon the terms of the condition of the bond [which are set forth in the opinion of the chief justice, *post.* p. 535,] and upon the usage and doings of the bank, and its records, which, with the records of the Sunderland Bank, were made part of the case. The Sunderland Bank was incorporated in 1825, and went into operation in that year, and continued till October 1st 1831, when, by virtue of *St.* 1831, *c.* 19, the name and location of the bank were changed to Amherst Bank, at Amherst. It appeared by the records, that while the bank was at Sunderland, Luther Root was the only cashier, and was annually chosen as such : That at the first annual meeting of the stockholders at Amherst, October 3d 1831, they chose nine directors, and that the directors, on the same day, chose Nathaniel Smith, president, and Luther Root, cashier of said bank, " for the year ensuing " : That the next annual meeting of the stockholders was held on the 1st of October 1832, at which Alpheus Field was chosen president, and Luther Root cashier, " for the year ensuing."

After this evidence was introduced by the defendants, the plaintiffs called I. Conkey and L. Boltwood, two of the directors, to testify that Root was chosen cashier, in 1831, without limitation as to time, and that he was not afterwards re-chosen cashier ; and that the books were in said Root's handwriting. The defendants objected to the admission of this testimony, but the judge admitted it, and the jury found against the record on this matter.

The defendants also contended that the sureties were not liable, by reason of the culpable neglect and misdoings of the plaintiffs, their directors and agents. The by-laws of the bank, (which are to be considered as in the case,) ordained that the directors should examine the vault of the bank, semi-annually at least, and take an inventory of cash, bank bills, and all other effects of the bank, compared with the books of the bank and the credits, to ascertain whether they perfectly agreed ; and submit a report of the debts and credits of the bank to the stockholders, at their annual meeting.

The records of the bank showed that on the 3d of October 1831, (the date of the bond in suit,) a committee of three was appointed to examine the state of the bank, and make report, and that their report was made and accepted on the 7th of February 1832 : That another of five was appointed for the same purpose, January 24th 1833, whose report was made and accepted on the 4th of February 1834.   It did not appear from the books of the bank that any other committee was appointed, or any subsequent examination made of the affairs of the bank.   I. Conkey testified that he was one of the committee, in 1831 and 1833 ; that he had no knowledge that any other committee was appointed, or examination had, while he was a director ; that the said committees did not take an inventory of the cash, bank bills, or effects of the bank, nor count the bills ; that they looked at the boxes and packages as marked, and at the balances on the leger, but did not go to the journal or blotter.

It was also in evidence, that during the whole time, one or more of the sureties on the bond were directors of the bank.

The judge ruled that this evidence would not discharge the sureties, nor either of them.

In order to show the default of the cashier, and in proof of the assigned breaches of the condition of the bond, and to charge the sureties, the plaintiffs called O. Baker as a witness, who testified to the admission of the cashier to him, as to the manner in which his (the cashier's) default happened, the extent of it, and the manner in which he covered and concealed it from the directors.   The defendants objected to the competency of this evidence to charge the sureties, but the objection was overruled, and the testimony was admitted.

The verdict was for the plaintiffs.   Judgment to be entered thereon, if the rulings of the judge were right ; otherwise, such judgment to be entered, or such further proceedings had, as law and justice may require.

The argument was had at September term 1840.

*I. C. Bates & Huntington,* for the defendants.   1.  The deposition of E. Root was not admissible, because the certificate of the magistrate did not show that the commission was executed

according to the Rev. Sts. *c.* 94, §§ 30 – 32, and the 6th and 7th rules of the court. [24 Pick. 385, 386.] *Davis v. Allen,* 14 Pick. 313. *Reed v. Boardman,* 20 Pick. 441.

2 E. Alvord's knowledge of C. Cooley's handwriting was not such as has ever been held sufficient to render him compe tent to testify to it. 3 Dane Ab. 383, 384. *Cary v. Pitt,* Peake Ev. (5th ed.) Appx. xxxiv. *Catchelor* ┌ *Honeywood,* 2 Esp. R. 714. *Garrells v. Alexander,* 4 Esp. R. 37. *State v. Allen,* 1 Hawks, 6. *Rex v. Slaney,* 5 Car. & P. 213. *Tharpe v. Gisburne,* 2 Car. & P. 21. *Cunningham v. Hudson River Bank,* 21 Wend. 557.

3. As N. Smith was not a competent attesting witness, evidence of his attestation should not have been received. 1 Stark. Ev. 337. *Swire v. Bell,* 5 T. R. 371. *Hovill v. Stephenson,* 5 Bing. 493.

4. There should have been written evidence that the bond was accepted by the directors. 12 Wheat. 90, per Marshall, C. J. The case of *Apthorp v. North,* 14 Mass. 167, is dis tinguishable from this ; as the court of common pleas was not a corporation, nor required by *Sts.* 1783, *c.* 43 and 44, to make a record or certificate of its approval of a coroner's or sheriff's bond.

But if parol evidence of the acceptance of the bond by the directors were admissible, yet the evidence received did not prove such acceptance as *St.* 1828, *c.* 96, § 10, requires. " The *board* of directors " did not accept the bond. There were nine directors, but only three of them were present, when, according to Boltwood's testimony, they " *expressed* themselves satisfied " with the bond. This mere oral expression of satisfaction, by three individuals, was of no legal validity. *Hughes v. Bank of Somerset,* 5 Littell, 45. *Waterbury v. Clark,* 4 Day, 198. *Hartford Bank v. Hart,* 3 Day, 495. *Mayor of London v Long,* 1 Campb. 25.

The approval of the bond is a *quasi* judicial act, and requires the joint action of at least a majority of the board. *The King v. Forrest,* 3 T. R. 40. *The King v. Hamstall Ridware,* 3 T. R. 380. And even if the approval were a ministerial act, it

must have been done by a majority of the directors when assembled. *The King* v. *Bellringer*, 4 T. R. 810. *The King* v. *Miller*, 6 T. R. 278.

5. The bond was void, being against the policy of the law. Directors, who were sureties, were neither safe nor competent judges of its sufficiency. Besides, the bond never came legally into the possession of the directors, as the bond of the defendants. As some of the obligors were directors, they could not deliver the bond to themselves. Nor could they contract with themselves. *Eastman* v. *Wright*, 6 Pick. 316. Story on Agency, 199. Theobald on Prin. & Surety, 2, 3. 1 U. S. Digest, Bond, 390. 594.

6. The plaintiffs' records show that the cashier's office was made an annual one ; and the sureties are not held for his defaults after the expiration of the first year. 3 Pick. 341, per Parker, C. J. *Boston Hat Manufactory* v. *Messenger*, 2 Pick. 223. *Bigelow* v. *Bridge*, 8 Mass. 275. *Arlington* v. *Merricke*, 2 Saund. 411. *Liverpool Water Works* v. *Atkinson*, 6 East, 507. *Wardens of St. Saviour's* v. *Bostock*, 2 New Rep. 175. *Peppin* v. *Cooper*, 2 Barn. & Ald. 431. *Leadley* v. *Evans*, 2 Bing. 32. *Hassell* v. *Long*, 2 M. & S. 363. *Dance* v. *Girdler*, 1 New Rep. 34. *Munford* v. *Rice*, 6 Munf. 81. *Commissioners* v. *Greenwood*, 1 Desaus. 450.

In the case of *Curling* v. *Chalklen*, 3 M. & S. 502, there was nothing to show, as there is in the case at bar, that the office was a yearly one. And in *Dedham Bank* v. *Chickering*, 3 Pick. 335, the condition of the bond was for the performance of the duties of cashier, " so long as he should continue in office." But in the case at bar, there is nothing which imports that the bond was a continuing bond.

The yearly choice of Root as cashier, by the directors, limited his office to one year. *Anderson* v. *Longden*, 1 Wheat. 91. When the law directs an annual election, the office is annual. So when the rules of a corporation require an annual election. And when there has been, for a course of years, an annual election, though not prescribed by a previous rule, the office is annual. 4 Co. 78. *Dance* v. *Girdler*, 1 New Rep. 34

**7.** Parol evidence to control the plaintiffs' records as to the yearly election of cashier was inadmissible. 4 S. & R. 321, per Tilghman, C. J. *Saxton* v. *Nimms,* 14 Mass. 320. *Chapman* v. *Searle,* 3 Pick. 38. *Thompson* v. *Society in Rehoboth,* 7 Pick. 160. *Thayer* v. *Middlesex Fire Ins. Co.* 10 Pick. 330. *Hayward* v. *Pilgrim Society,* 21 Pick. 276. *Owings* v. *Speed,* 5 Wheat. 420. *Jackson* v. *Walsh,* 3 Johns. 226. *S. Carolina Society* v. *Johnson,* 1 M'Cord, 41. *Mayor, &c. of Tuskaloosa* v. *Wright,* 2 Porter, 230.

The evidence was also immaterial. The yearly election of cashier made his office a yearly one, without the addition of the words "for the year ensuing."

The cashier was the agent of the plaintiffs, and they are es topped to deny his record. Story on Agency, 103. *Welland Canal Co.* v. *Hathaway,* 8 Wend. 480. *Bacon* v. *Chesney,* 1 Stark. R. 193. *Bean* v. *Parker,* 17 Mass. 591. *Commonwealth* v. *Andre,* 3 Pick. 224. If the record was incorrect, the plaintiffs are responsible for it, and the sureties were discharged ; as it was a fraud on them. *Peel* v. *Tatlock,* 1 Bos. & Pul. 419. *Stone* v. *Compton,* 5 Bing. N. R. 142.

**8.** The sureties are discharged by the culpable negligence of the plaintiffs, who made only two investigations of the state of their affairs, for eight or nine years. In an action on bond, the defendant may plead either that the plaintiff has not been damnified, or that he was himself the cause of the damage of which he complains. Theobald on Prin. & Surety, § 183. Hurlstone on Bonds, 199. *Mountague* v. *Tidcombe,* 2 Vern. 518. *The People* v. *Jansen,* 7 Johns. 332. *Rathbone* v. *Warren,* 10 Johns. 587 *Pidcock* v. *Bishop,* 3 Barn. & Cres. 605. *Whitmore* v. *Wilks,* 3 Car. & P. 364. *Manhattan Co.* v. *Lydig,* 4 Johns. 377. *Payne* v. *Ives,* 3 Dowl. & Ryl. 664. 3 Wheat. 154, 155, *note. Hulland* v. *Malken,* 2 Wils. 126. Bac. Ab. Obligations, F.

In *Minor* v. *Mechanics Bank,* 1 Pet. 46, which will be relied on by the plaintiffs, the defendants' plea in bar alleged a malfeasance by the directors while not acting within the scope of their authority, which malfeasance did not bind the corporation. In the case at bar, the defendants offered to show negligence in the

directors while acting within the scope of their authority, which does bind the corporation. Story on Agency, 313. 4 Pick. 339, 340.

9. The admissions of the cashier are not evidence against his sureties. 2 Stark. Ev. 48. 3 Stark. Ev. 1386, 1387. *Evans* v. *Beattie*, 5 Esp. R. 26. *Smith* v. *Whittingham*, 6 Car. & P. 78. *Ward* v. *Suffield*, 5 Bing. N. R. 383. *Boston Hat Manufactory* v. *Messenger*, 2 Pick. 223. *Jaggers* v. *Binnings*, 1 Stark. R. 64. Rev. Sts. *c.* 120, § 14.

*Forbes*, (*Wells* was with him,) for the plaintiffs. 1. There is no reason to doubt that E. Root's deposition was in fact rightly taken ; and as the 7th rule of the court on the subject does not prescribe a condition precedent, but is directory merely, the deposition was rightly admitted.

2. E. Alvord's testimony as to the handwriting of C. Cooley was admissible. The witness, having had occasion to examine and certify Cooley's official signature, was better able to judge of its genuineness than if he had only received letters from him. Yet in the latter case, he would have been competent to testify to his signature. 2 Stark. Ev. 652, 654, 657, *notes. Commonwealth* v. *Carey*, 2 Pick. 47. *Moody* v. *Rowell*, 17 Pick. 490. *Richardson* v. *Newcomb*, 21 Pick. 317. *Homer* v. *Wallis*, 11 Mass. 312. *St.* 1818, *c.* 110. Rev. Sts. *c.* 127, § 10.

3. If N. Smith was wholly incompetent as an attesting witness, proof of his attesting signature did not tend to authenticate the execution of the bond. But if this evidence was not in strictness admissible, yet if a new trial is to be granted on this ground, it should be on the single point of the execution of the bond, and not upon the whole case. *Winn* v. *Columbian Ins. Co.* 12 Pick. 279. *Boyd* v. *Brown*, 17 Pick. 453. *Dyer* v. *Rich*, 1 Met. 192.

4. The legal presumption is, that a full board of directors was present when they expressed their satisfaction with the bond. The burden is on the defendants to show that a majority was not then present. The *St.* of 1828, *c.* 96, § 10, does not require the directors to make a record or even a written acceptance of the cashier's bond. The case of *Dedham Bank* v. *Chickering*, 3

Pick. 335, is conclusive on the point, that a bond in possession of the proper officers of the bank is to be taken as having been properly accepted, without any written evidence of acceptance. S. P. *Union Bank of Maryland* v. *Ridgely*, 1 Har. & Gill, 429. *Bank of U. States* v. *Dandridge*, 12 Wheat. 64. *Apthorp* v. *North*, 14 Mass. 167.

5. The bond in suit is not contrary to any policy of the law. The acceptance of it was not a judicial act. The bond was taken for the security of the plaintiffs only, and they only can object to it. 12 Wheat. 84.

6. In *Dedham Bank* v. *Chickering*, before cited, it was decided that the annual election of the cashier did not make his office an annual one ; and that case is not distinguishable in principle from this. The *St.* of 1828, *c.* 96, § 9, expressly declares that cashiers " shall retain their places until removed therefrom, or others are appointed in their stead ; " and therefore if the plaintiffs had made a by-law, that the cashier's office should be annual, such by-law would have been void, being contrary to the statute.

7. The plaintiffs' records do not show that Root was a *sworn* officer. His records, therefore, do not bind them. Besides, the records of the directors are not the records of the bank, and do not bind it. 12 Wheat. 78. Nor could directors bind the bank by appointing a cashier annually ; and their attempt to do so would not avail the defendants. The minutes of the directors are not records at all ; certainly not the records of the bank. And the bank are not to be prevented from denying or disproving them. Suppose the plaintiffs had assigned the false records as a breach of the bond ; would they have been estopped to show the records to be false ? *Commonwealth* v. *Bullard*, 9 Mass. 270.

8. The case of *Minor* v. *Mechanics Bank*, 1 Pet. 46, is a conclusive answer to the objections made to the plaintiffs' recovery on account of the negligence, &c. of the directors. 1 U. S. Digest, Bond, 122.

9. The admissions of Root are evidence against the other defendants. This point was expressly adjudged in *Pendleton* v

*Bank of Kentucky,* 1 Monr. 181. See also 8 Pick. 127. 17 Mass. 227. *Frye* v. *Barker,* 4 Pick. 384. *Grant* v. *Jackson,* Peake's Cas. 203. *Bridge* v. *Gray,* 14 Pick. 55. *Middleton* v. *Melton,* 10 Barn. & Cres. 317, and cases there cited.

SHAW, C. J. This is an action by the Amherst Bank against Luther Root, late cashier, and his sureties, on his official bond conditioned for the faithful performance of the duties of that office. The plaintiffs having recovered a verdict, the defendants now move for a new trial on sundry exceptions taken at the trial before *Wilde,* J.

1. That the deposition of Elisha Root does not appear to have been duly taken. It was objected to, on the ground that it did not appear by the certificate of the magistrate, or otherwise, that it was taken conformably to the commission issued. The court are of opinion that it is within the rule laid down in *Reed* v. *Boardman,* 20 Pick. 441. It was a foreign deposition, and the interrogatories and cross interrogatories were put and answered, and the answers were sworn to, and therefore we think it was rightly admitted.

2. The next objection was to the testimony of Elijah Alvord, Esquire, former clerk of this court, as competent evidence to prove the handwriting of Charles Cooley, one of the defendants. Mr. Alvord testified that he never saw Charles Cooley write, but that in the course of his business, as clerk of the courts, he had often seen documents, purporting to be official, and authenticated by his handwriting and official signature as a justice of the peace, and had certified the same, as such, to the pension office.

The court are of opinion, that the witness, in stating that he had acted upon the official signatures of the witness, which he had been acquainted with, in the course of business, laid a sufficient foundation for testifying to his opinion as to the genuineness of the handwriting. *Moody* v. *Rowell,* 17 Pick. 490. *Titford* v. *Knott,* 2 Johns. Cas. 211. *Rex* v. *Slaney,* 5 Car. & P. 213.

3. Exception to proof of the handwriting of Smith as an attesting witness.

It appears from the report, that Smith was a stockholder at the time of the attestation, and so continued to the time of his decease. It is therefore obvious, that if Smith himself were living, and within the jurisdiction of the court, he could not be examined as a witness, being incompetent on the ground of interest. 1 Stark. Ev. 337. *Swire v. Bell,* 5 T. R. 371. And we think it follows as a necessary consequence, that proof of his handwriting is not admissible. Such evidence is in its nature secondary, being admissible only when the attesting witness is dead, or without the jurisdiction of the court, or when he has become interested after the attestation, by act of the law, and under certain limitations not material to this case. *Hovill v. Stephenson,* 5 Bing. 493.

In saying that if Smith had lived he could not have been called as a witness, it is proper to qualify the remark by adding, that such would have been the case, if his interest had continued. But he might have been qualified as a witness, by an actual alienation of his shares, so that he had ceased to be interested at the time of the trial. But even then, he would not be called to prove the fact of attestation, by himself, but the fact of execution by the parties. It being an instrument not requiring attestation to give it legal effect as an instrument, it would be sufficient to prove the fact of execution, by any competent evidence, although the attestation might be nugatory by reason of the interest of the attesting witness.

The court are of opinion, that this evidence to prove the handwriting of Smith, the attesting witness, ought not to have been admitted ; and for this reason, that a new trial, as to the fact of the execution of the bond, must be granted.

4. The next ground of exception was, that it does not appear that there was a record or written evidence of a vote by the directors accepting the cashier's bond as satisfactory. We think the evidence upon that subject was rightly admitted and left to the jury. A distinction may be taken between that act which would amount to an acceptance of the bond on the part of the corporation, and that expression of approbation on the part of the directors, which is required by the charter and by-laws. If

the bond was executed and delivered in the mode required by law to give it effect, it may be deemed the deed of the principal and sureties, although it may never have been approved by the directors. The directors may have been chargeable with a neglect of duty to the stockholders, in not being more vigilant in obtaining a satisfactory bond, and in complying with the by-laws in that regard, and yet the parties to the obligation may not avail themselves of that objection, to avoid their obligation. The by-laws may be considered directory, prescribing the duty of the directors, and not as a condition precedent, a compliance with which is requisite to give validity and effect to the bond.

But without relying much upon this distinction, we think it now settled, certainly in this Commonwealth, that a formal vote is not necessary to prove either the acceptance or the approval of the bond ; but that both may be presumed from circumstances. *Dedham Bank* v. *Chickering*, 3 Pick. 335. *Bank of United States* v. *Dandridge*, 12 Wheat. 64. We are also of opinion, that the parol evidence was admissible, to prove that soon after Root was appointed cashier, he presented his bond, this bond, which was laid before the board of directors, at their meeting, and that they expressed themselves satisfied. It is argued that this was of no avail, because, as appears by the testimony of Mr. Boltwood, three directors only were present, when five were necessary for a quorum. But this is hardly a correct statement of his testimony. He states that this was done at a meeting of the board of directors ; or, as he states, it was laid before the board of directors at their next meeting ; certainly implying that it was at a regular formal meeting. He can recollect the names of two directors only besides himself, who were present. But it by no means follows from this, that there was no other director present ; nor does it appear to me that he intended to be so understood.

5. The next exception is, that the bond was void, as against the policy of the law, because three of the directors, whose duty it was to examine and approve the cashier's bond, were themselves his sureties. This exception certainly comes with a very bad grace from those directors who thus became sureties. It sets

up the dereliction of their duty as directors, to avoid their obli-gation as contractors. It may have been in very bad taste, it may have been very indiscreet and ill judged, to put themselves in a s'tuation to express an opinion on their own sufficiency as such sureties. But, whether right or wrong, it is impossible to per-ceive how the obligors, either such directors themselves, or their coöbligors, can avail themselves of this circumstance to avoid their obligation.

Another objection growing out of the same fact was, that if directors, so being sureties on the deed, could approve or accept the deed, it was in effect a contract with themselves, and of no binding effect. The case of *Eastman* v. *Wright*, 6 Pick. 316, was relied upon in support of this position. That was a con-troversy between persons and classes of persons, all of whom were acting in their natural capacity. Here the corporation is an artificial person in law, distinct from all the individuals com-posing it, capable of contracting and bringing suits, and may con-tract with its own members, or have suits against them, as well as against any other persons.

6. But by far the most important objection to the right of the plaintiffs to recover on this bond, and which goes to the entire merits, is, that the cashier, for whose faithful performance of his duty the bond was given, held his office for one year only, and that for that term only were the sureties responsible for him ; and, as no breach of duty is alleged to have occurred within that year, they are not liable in this action.

The duty of the defendants under this instrument is created by contract ; and to determine the extent of the duty, we must carefully examine the instrument. The bond is dated 3d of Oc-tober 1831, in common form, in the penal sum of $ 20,000, con ditioned as follows : " Whereas, the directors of the Amherst Bank aforesaid have appointed the abovenamed Luther Root cashier of the bank aforesaid ; now if the abovenamed Luther Root shall well, truly, and faithfully perform the duties of the office of cashier of the bank aforesaid, then this obligation is to be null and void, otherwise to remain in full force and virtue."

It is very manifest, that by the terms of this condition the ob-

ligation is unlimited in time, and undertakes for the faithful conduct of the cashier, as long as he shall continue in office. But it is a well settled and now very familiar rule of law, that general words in an obligation may be limited and restricted by the recital, by the subject, or by facts which, when applied to the language used, show that it must have been so understood by the parties. As where it is recited that one has been appointed to an office for a limited time, and then there is a stipulation for a general performance ; the law will look to the recital, and limit the stipulation for a general performance to the time for which it is recited that he is chosen. Or where a bond is given for the faithful performance of the duties of an office that is, by the law or usage by which it is created, limited to the term of one year, such bond is available only as security against violations of duty happening within that year. This results from the subject matter. Such office, *ex vi termini*, means a retainer or engagement for one year, and must then expire. If there be a reëlection, it is in fact to another and not the same office ; such as the offices of treasurers of the state, counties, towns, and the like, where the office is created by law, and by the same law made annual. Is such the case with the cashier of the bank, for whose faithful performance of his duties, as such, this bond was given ?

In order to answer this question, we must look at the law under which this officer was chosen. The case is somewhat peculiar ; and it becomes necessary to resort to several statutes for the purpose.

The Sunderland Bank was incorporated by *St.* 1824, *c.* 148. It was made subject to the rules and entitled to the privileges of the State Bank, except as far as modified by that act. By that act, section 8th, the cashier, before entering on the duties of his office, was required to give bond, with sufficient sureties to the satisfaction of the board of directors, in a sum not less than $20,000, conditioned for the faithful discharge of the duties of his office. But it will not be necessary to resort to the act incorporating the State Bank, to ascertain the tenure of office of the cashier, as this bank subsequently became subject to another set

of rules. The Sunderland Bank had been limited by its act of incorporation to October 1831 ; to which time the State Bank, and most of the banks of the Commonwealth, were limited. In February 1829, the general act was passed, " to regulate banks and banking." *St.* 1828, *c.* 96. This act, as is well understood, was passed as a measure preparatory to the renewals of charters, which were soon to expire, and to adopt an uniform system applicable to all similar corporations. By accepting new acts of incorporation, or rather acts continuing their corporate existence and privileges, such continuance being made subject in terms to specific provisions, these corporations must necessarily assent to such provisions, and become bound by them, though differing from the provisions of the original acts of incorporation, or charters.

By the act of February 28th 1831, ( *St.* 1830, *c.* 58,) most of the banks were continued for a further period of twenty years, subject to the provisions of the foregoing act regulating banks and banking, and some further provisions contained in the continuing act, not material to the present inquiry. The Sunderland Bank, however, was not one of the banks continued by that act. But by a special act of the same session, ( *St.* 1830, *c.* 149,) the said corporation was conditionally continued and extended to 1851, subject to the provisions of the two foregoing acts, viz., the general " act to regulate banks and banking," and the " act to continue banking corporations, and for other purposes."

By *St.* 1831, *c.* 19, the name and place of the Sunderland Bank were changed ; it was removed from Sunderland, in the county of Franklin, to Amherst, in the county of Hampshire, and called the Amherst Bank ; such alteration to take effect from and after the 1st of October then next, 1831. The corporation remained the same. The alterations merely affected the name and place.

It seemed to be necessary to go through this detail, in order to ascertain where we are to look for the law, by which the office of the cashier of the Amherst bank was constituted, at the time when this bond was given. We find that the Amherst

Bank is identical with the Sunderland Bank ; that the Sunder-land Bank, by accepting the renewal of its charter with certain provisions, assented to those provisions, and they thereby became part of the provisions of the charter, in the same manner as if they had been in terms inserted in the original act of incorporation.    Hence we find, that it is the " act to regulate banks, and banking," passed February 1829, (*St.* 1828, *c.* 96,) which regulated and governed this bank in 1831.    By this act, § 9, " the directors shall have power to appoint a cashier, clerks, and such other officers, &c., with such salaries, &c., and such cashiers, clerks, and other officers shall retain their places, until removed therefrom, or others are appointed in their stead." Section 10th provides that " the cashier, before he enters on the duties of his office, shall give bond or bonds, with two or more sureties, to the satisfaction of the board of directors, conditioned for the faithful performance of the duties of his office." This provision regulates the office of cashiers, and fixes the tenure by which it is held.    It does not prescribe the time for which it is to be held ; but whether for a fixed or an unlimited time, they are to hold until another is appointed.    If the cashier is to hold the office, he is to do the duties, and they are official duties ; and therefore a bond, that he shall faithfully perform the duties of cashier, will include duties performed after the limited time for which he is chosen, and during the time that the office is continued by force and operation of law.    We think, therefore, that when Luther Root was elected cashier, in October 1831, even if it was entered in the directors' minutes as an election for the year ensuing, it not being by law an annual office, he held it by force of the provision of the general law above stated, until another was chosen in his stead.    The provision is not merely that he shall continue to do the duties, but shall retain the place, hold the office, with all its powers, privileges and immunities, until removed or another person is elected in his stead.

Then the question recurs, and it is the only remaining question, whether an election by the directors, made in October 1832, or at any subsequent period, of the *same person,* Luther

Root, as cashier for the ensuing year, or for an unlimited time, was the election of another person in the stead of Luther, which was the limitation of the term of the first office, as constituted by the vote of the directors and the law under which he was elected.   It was certainly not so within the letter, or any reasonable construction of the law, and we cannot perceive that it is within the spirit or intent of the contract of the parties.

The consideration, that the directors held their offices by the annual election of the stockholders, obviously has no weight, in controlling or modifying a positive provision of law, making the office of cashier indefinite.   But the plausible argument is, that the fact of an annual election of cashier is evidence of a by-law or usage, making the office annual.   In the first place, it may be said in answer, that the corporation has not been in existence a sufficient length of time to give its usages and customs the force of law, or to prove the existence of a by-law of the corporation, which does not appear by its records.   But another and perhaps more satisfactory answer is, that the directors are presumed to know the general law ; that they consequently know, when they come into office, that the cashier, whom they find there, will by law continue in his office, unless they think fit to remove him.   Their act is to be taken in connexion with their presumed knowledge of the law in this respect.   But it may be satisfactory to them—constituting in theory, and some times in fact, a new board of directors — and also satisfactory to the cashier, that they should express their will and intention upon the subject.   Under such circumstances, the election of the cashier to an office which he already holds, and would hold without election, must be regarded as a manifestation of their will and intent that he should *continue* to hold the office for another year, unless there should be cause afterwards to remove him.   That such an election is considered by the directors themselves as the continuance of an existing office, and not the commencement of a new one, is manifest from the fact that they require no new bonds.

Until the decision of the case of *Bigelow* v. *Bridge*, 8 Mass. 275, we are inclined to think that it was not the practice of

county treasurers, and similar officers holding annual offices for several years by successive elections, to give bond each year after the first. That case, however, was doubtless decided correctly ; and it went upon the ground that the office by law is an annual office, and terminated with the year. The bond, therefore, conditioned that he should faithfully perform the duties of that office, was necessarily limited to the duties of the office held for and during that year. This decision, therefore, is not in conflict with the principle laid down in the present case. The cases where it has been held, that the generality of the words of an obligation may be restrained and modified, are of two classes ; *first*, where there is a preamble or recital, stating directly, or by implication, the intent and purpose of the parties to the bond ; or, *secondly*, where it is a stipulation for fidelity in office, and it appears by the nature and constitution of the office, that it was limited to a particular time.

In the present case, the words are general, and the defendants seek to show that they ought to be limited to a certain time. There is no recital, and the office itself is not annual. But it is said, that in the particular case the election was for the year ensuing. To that it was answered, that though the election was for the ensuing year, yet the law made it a continuing office, until another was chosen in his place ; and no other was chosen till after the breaches assigned. And we think this answer is satisfactory.

7. The views of the subject which we have taken, have rendered it unnecessary to consider whether the parol evidence was competent to contradict and control the entries made in the directors' minutes, which, if regularly kept, would be made by Root himself, as secretary of the board.

8. Another ground of argument for the defendants was, that the sureties were not liable by reason of the culpable negligence of the directors and their agents, inasmuch as the by-laws of the bank made it the duty of the directors to make frequent examinations of the affairs of the bank, to count the money, inspect the books, and generally to watch over its concerns ; and it is contended that it does not appear, from an inspection of the

minutes of the directors, that this was done.  Whether their duties were as diligently done as they ought to have been, we do not inquire ; because it appears to us that the by-laws were directory, intended to prescribe the duty of the directors ; and though the performance of them might tend to detect and disclose negligence, or lead to an early disclosure and detection of default on the part of the officer, and so operate indirectly to the safety of the sureties ; yet they were not intended for that purpose, nor can a compliance with them be deemed a condition precedent to the liability of the sureties.  But further ; the adoption of such a principle would lead to this result, that the negligence and fault of one agent, or set of agents, for a corporation, would deprive them of a remedy against another for their default.  As well might the directors excuse themselves for the neglect of their duty, by showing that the cashier had failed to lay before them the books or accounts, the weekly or other statements of the affairs of the bank, by reason of which they were unable to perform their duty.  The idea that the cashier is excused by the act or negligence of the directors, arises from considering the board of directors as the corporation, and then applying a very equitable principle, that one ought not to recover of a surety damages caused by himself.  We think the principle does not apply.  The only case which seems to countenance it is *The People* v. *Jansen*, 7 Johns. 332 ; a case which has been often questioned, and which we think is fully answered by the cases of *United States* v. *Kirkpatrick*, 9 Wheat. 720, and *Minor* v. *Mechanics Bank of Alexandria*, 1 Pet. 46.

9. The last exception is, that evidence was received of the admissions and declarations of Luther Root, the cashier, to charge the sureties.  This is a case where the cashier and his sureties are sued on their joint obligation.  Whatever may be the law when one becomes guarantor or surety for another, by a separate obligation, we think where the principal and sureties are all bound by a joint obligation, the declarations and admissions of the principal are evidence against the sureties in a joint action against them.  *Hunt* v. *Bridgham*, 2 Pick. 581.

*Martin* v. *Root,* 17 Mass. 227. *Whitcomb* v. *Whiting,* 2 Doug. 652. *Pendleton* v. *Bank of Kentucky,* 1 Monr. 181. The provision of Rev. Sts. *c.* 120, § 14, that declarations made by one promisor shall not take the case out of the operation of the statute of limitations, seems to be one of the cases, where an express exception proves the existence of the general rule It implies that, but for such express enactment, the admission of one would bind both. And this exception is founded on very good reason ; because, in case of the statute of limitations, an admission has the legal effect of making a new contract.

In most of the cases cited in support of this last exception, the guaranty was the separate contract of the defendant, and the decisions were founded on the consideration that the principal could be called as a witness. This of course cannot apply to a case like the present, where the principal and surety are bound by the same contract, and are parties to the suit.

As the only exception, which is sustained, relates to the proof of the execution of the bond, the court are of opinion that this is one of those cases where the new trial should be confined to the point, whether the bond was duly executed, and that the issue to the jury on the new trial should be on that fact only. *Winn* v. *Columbian Ins. Co.* 12 Pick. 279. *Sprague* v. *Bailey,* 19 Pick. 442. *Dyer* v. *Rich,* 1 Met. 192. If that fact is found for the plaintiffs, they will be entitled to a general verdict ; oth-. erwise, a general verdict will be returned for the defendants.

DEWEY, J. Upon one of the points raised in the present case, and that a material one, and directly affecting the whole merits of the case, I cannot concur with my brethren in the opinion which has been delivered.

In the view which I have taken of this case, the jury should have been instructed, that upon all the evidence that was competent and properly admissible in the case, the liability of the sureties of Luther Root was a limited one in point of time, and was not to be extended beyond October 6th 1832 ; which period being several years prior to the time of the alleged defalcations of Root, the sureties are not chargeable therewith upon their bond of October 1831.

I will proceed to state, as briefly as the nature and importance of the case and the principles involved in it will admit, the reasons which have influenced my mind in arriving at this result.

The first question I propose to consider is, under what form and declared tenure did Luther Root hold the office of cashier, at the time of the execution of the bond by the defendants ? Was it limited or unlimited in point of time, as indicated by the formal appointment ? The evidence upon this point is to be found in the records of the acts of the corporation through their legally constituted agents, the board of directors. By a by-law of the stockholders, adopted 1825, it was provided, that "at all meetings, both of directors and stockholders, the president shall preside and the cashier shall act as clerk." Under this authority, and upon the book of records kept in pursuance of it, is found recorded the following vote : " October 3d 1831. At a meeting of the directors of the Amherst Bank, held at the house of Elijah Boltwood, on Monday the third day of October 1831, Nathaniel Smith was chosen president of the board, and Luther Root, cashier, for the year ensuing." Accompanying this vote, and recorded in direct connexion therewith, as of the same meeting, are votes fixing the salary of the cashier, the banking hours, &c.

That the book, thus offered in evidence, is the original and only book of records of the doings of the stockholders and the directors, is not denied ; and from inspection, it appears to have been used as such, not only from the original organization of the banking company, in 1825, to the period when Root ceased to be cashier, but also subsequently by the directors themselves, in recording their doings under their own signatures.

The inquiry then arises, to what extent are books of records of a corporation, containing their doings both in their meetings of the entire body, and their acts through the votes of their legally constituted agents, evidence of such acts and votes, and properly to be introduced and relied upon as such, as between individual members of such corporate body, or against such corporation, in behalf of third persons who may be affected by them. Upon this question, as it seems to me, there can hardly

be two opinions ; but the importance of this species of proof, as controlling the oral testimony which was offered at the trial, and as establishing the contract between the parties to the bond, is such, in reference to the result to which I have arrived upon the general merits of the case, that I shall briefly refer to some authorities establishing the force and effect to be given to the records of corporate bodies.

That the books of the corporation are the best evidence of their acts, and ought to be admitted in evidence whenever their acts are to be proved, was the doctrine of the case of *Owings* v. *Speed*, 5 Wheat. 420. The books of a corporation containing a registration of their public acts are evidence, as between the members of the body, or against the body. 1 Stark. Ev. 298. The same principle will be found fully sustained by *Rex* v. *Mothersell*, 1 Stra. 93, and *Rex* v. *Martin*, 2 Campb. 101. *Highland Turnpike Company* v. *M'Kean*, 10 Johns. 154. *Union Bank* v. *Knapp*, 3 Pick. 103. *Coffin* v. *Collins*, 5 Shepley, 440. In the case of *Hallowell and Augusta Bank* v. *Hamlin*, 14 Mass. 178, though a question was very properly raised, whether a copy of the record, certified by the clerk, was competent evidence, and it was insisted that the original, or a sworn copy, should be produced, yet no question was made, but that the corporation books were to be used as evidence of their acts. They must be shown to be such books, and to have been kept by the proper officer ; both which points are fully established in the present case. The language of this record is plain and explicit. If it be the evidence upon which the fact is to be settled, as to the question whether the appointment of Root as cashier was for a limited period, and that expressed and defined in the appointment itself, it clearly establishes the affirmative of that proposition.

Is it competent for the corporation to control their own records, by introducing oral testimony contradicting the facts as stated on their records, for the purpose of charging third persons ? I think not. They may properly require evidence that the book produced in evidence is their book of records, and that its entries were made by a proper person. They may avoid

it by showing interpolations, or fraudulent alterations, or any thing which shows that the evidence offered is not the original record of the transaction, as made by the proper officer. But of this there is no suggestion. This vote, in its present form, has been thus recorded at large on this book during the whole period since October 1831. It has thus remained uncorrected and unexpunged, not only during the seven succeeding years dur ing which Root was cashier, but also to the present time. Al though the records are always open to the inspection, and are to be presumed to be regularly examined and approved by the directors, from time to time, yet no memorandum, no suggestion is to be found on this book, that this vote was not properly and truly recorded. It is too late now to question its accuracy, by calling witnesses to give another account of the doings of the board of directors on the 3d of October 1831. The corporation are bound by this record in their dealings with third persons who may be affected by it. The defendants may well say to the plaintiffs — we were influenced, in assenting to sign this bond, by the tenure of the office, as you had declared it in your recorded vote.

If written testimony has any superiority over oral ; if that, which is committed to writing at the moment when the act is done, is more worthy of confidence than the recollection of witnesses giving no other pledge for its correctness than the reminiscences of what has been denominated " *slippery memory* " ; if the whole doctrine of the credit to be given to records of corporate bodies is not to be disregarded ; it would seem that there could be no question but that, in the present instance, the record should control.

As it seems to me, it would be opening a direct avenue to fraud, if the books of a corporation may speak one language and the directors and stockholders are to be permitted to contradict them by their testimony on the stand as witnesses. As it regards third persons, it would be liable to the objection of introducing evidence of an inferior grade to control the superior ; and also the further objection, that if all doubts were removed as to th ͏ fact that the oral testimony was the language of truth, and

the record false, still a third party should only be holden by the terms of the record, if he acted upon the faith of it. I have no reason to suppose my brethren differ from me on this point in the case, although they have expressed no opinion upon it ; it being unnecessary to do so, in the view they have taken of other parts of the case.

I will, before leaving this point, refer to the opinion of this court in *Hayward* v. *The Pilgrim Society*, 21 Pick. 277, as bearing strongly upon this question. It was said in that case, that the defendants were a public body established by law. " It was their duty to keep written memorials of their acts, and not to leave them to the uncertain and varying recollections of different individuals. Their acts are to bind others ; they necessarily consist of votes, which should be in writing. It may become important to prove them in court. How shall this be done ? By reference to the written evidence, or by the testimony of witnesses ? It is very obvious which would be the safest mode." Here, I think, we have the rule, and the reason of it. Nor do I perceive that the circumstance, that the record here offered related to the person who, by the by-laws of this corporation, was constituted their recording officer, should in any degree vary the effect of the evidence when offered, as it is, by third persons, to show the nature and extent of a contract entered into by them with such corporation. The rights of third persons are not the more to be affected, by the introduction of oral testimony to control or vary such record, for this cause. The clerk is the agent of the plaintiffs, and the record is theirs.

Having established the form of the appointment to have been that of an annual office, the next inquiry is, whether the plaintiffs treated the office as thus limited, and proceeded, through their authorized agents, the directors, at the expiration of the year, to make a new election ? This is clearly shown by the records, in the following words : " At a meeting of the directors, held on Monday, 6th October 1832, Alpheus Field was chosen president, and Luther Root cashier, for the year ensuing." We have then the legal evidence of these two facts : 1st. That Root was, in October 1831, elected cashier for the year ensuing :

2d. That a new election took place at the expiration of that year In connexion with this, and for the purpose of showing the usage of the bank, we have from the records the further fact, that a cashier had been annually appointed in each of the six years preceding the election in 1831. With these facts before us, we are next brought to the further inquiry, whether upon the bond of the defendants, given 3d of October 1831, to secure the faithful discharge of the duties of the office to which Root had then been thus elected, the sureties can be charged for the defaults of Root, occurring between the periods of March 1836 and January 1838.

The proposition, which I consider as lying at the foundation of this defence, is this : that if a person be surety for the fidelity of another in the discharge of the duties of an office, the appointment to which is only for a limited period, the surety cannot be holden for the defaults of the principal beyond that period. This doctrine is found distinctly recognized in the elementary books, and in various reported cases. The adjudicated cases, exemplifying this legal position, may be classed under different heads ; and so far as they rest upon facts peculiar to their particular class, I admit they are not to be considered as strict precedents for cases wanting some of these elements. Thus in the leading case on this subject, *Arlington* v. *Merricke*, 2 Saund. 403, which was an action upon the bond of one Jenkins as a deputy postmaster, where the condition of the bond was, that the obligation should be void if Jenkins should, during all the time he continued deputy, faithfully execute the duties of said office, there was a recital in the bond, that " whereas the said Arlington had appointed T. J. his deputy for the term of six months from," &c. So also in the case of *The Liverpool Waterworks Company* v *Atkinson*, 6 East, 507, where the bond recited that the principal obligor had agreed with the plaintiffs to collect their revenues from time to time, for twelve months from the date, and the same was conditioned, that if the said A. should from time to time, and at all times thereafter during the continuance of his employment, use due diligence in collecting and receiving all sums of money which should annually become

due to the company, and also if the said A. so long as he should continue to be employed by the company, from time to time justly and truly behave himself in said office, and duly account, &c. and the court decided that the sureties were not liable for a default after the expiration of the twelve months; holding the appointment one of limited duration, as the case disclosed a limitation on the face of the bond. In this respect, both of these cases differ from that under consideration. There are, however, to be found in both very strong expressions, indicating the covenants on the part of the sureties to be commensurate with the entire continuance of the principal in the employment or office to which he was appointed. Still it may be proper to concede, that if those cases stood alone, it might reasonably be contended that they were decided upon the ground that the general expressions in the bond, as to the extent and duration of the obligation, were restrained by the recitals of the time for which the appointment was conferred. But that it is not necessary that the limitation should appear by a recital in the bond, in order to protect the sureties from liability beyond the actual period for which the party was appointed to an office or employment, is very fully settled by numerous authorities.

Thus in *Wardens of St. Saviour's* v. *Bostock,* 2 New Rep. 175, the obligors entered into a bond as sureties for one Armstrong, the condition of which bond recited that said Armstrong was on such a day appointed a collector of the church rate of the parish of St. Saviour's, by virtue of which office he was empowered to receive all such moneys as were assessed on the inhabitants, and obligating the sureties for his duly accounting for all moneys received by him on account of the above rate, and also all and every other rates thereafter to be made, and collected by the said Armstrong. It appeared that Armstrong received several successive annual appointments to the same office, and the defalcation complained of was subsequent to the expiration of one year from his first appointment. It was held that the office, being an annual one, the sureties on the bond were answerable only for the faithfulness of Armstrong during the first year, and not for his defaults after his subsequent

reappointments to the same office.   Here, it will be perceived, there was no recital in the bond that the appointment was for one year.   But the sureties were held not liable, the case being put upon the ground that they were not holden beyond the period limited in the actual appointment to the office.

In *Peppin* v. *Cooper*, 2 Barn. & Ald. 431, where the condition of the bond was for the due collection of certain rates and duties *at all times thereafter*, although it did not appear on the bond that the collector's appointment was limited, yet the statute making it an annual office, the court held that the surety was liable · for one year only.   To the same effect are the cases of *Hassell* v. *Long*, 2 M. & S. 363, and *Leadley* v. *Evans*, 9 Moore, 102.   *S. C.* 2 Bing. 32, and other cases cited in Theobald on Principal and Surety, *c.* iv. 23 Amer. Jurist, 267, 268.

In our own reports is the case of *Bigelow* v. *Bridge*, 8 Mass. 275, on a bond given in the year 1790, the condition of which was, that said Bridge should faithfully discharge the duties of county treasurer, and account for all sums of money he should receive for the use of the county.   Bridge was continued treasurer by successive annual elections, the entire period from 1790 to 1806.   The liabilities, if any existed, accrued in 1806, and the court held that the bond was only intended to protect the public during the year for which the treasurer was elected, at the time of the execution of the bond ; the office being an annual one.   There are two points of similarity between that case and the case at bar, which I deem it important to notice. (1.) It was provided, in the act authorizing the appointment of county treasurers, that the person elected to this office should continue in said office until some other person should be chosen and qualified in 'his room.   *St.* 1785, *c.* 76.   (2.) The cases are also similar in this, that there was, at the expiration of the year, a reappointment of the same individual.   The case of *Bigelow* v. *Bridge* establishes the doctrine, that the reappointment of the same individual is to all intents and purposes the same in effect, as it regards his original sureties, as the election of another person to the office ; and that the provision of the statute, that a person elected to the office shall continue in the

said office until another person is chosen in his room, does not continue the original bond in force after the reappointment of the same individual.

To the main point which we have been considering, that where the office is an annual one, though no time is specified in the bond, the sureties are not holden for any default of the offi· cer subsequent to the year, though he is continued by reëlection, I may also refer to the cases of *Commissioners &c.* v. *Green-wood*, 1 Desaus. 450. *South Carolina Ins. Co.* v. *Smith*, 2 Hill, 587. *Munford* v. *Rice*, 6 Munf. 81. 1 U. S. Digest, Bond, 245. 247.

I shall assume it, therefore, to be well settled, so far as judi-cial decisions can settle any point, that the liability of the sure-ty is not to be extended beyond the term of the actual appoint-ment conferred upon the principal, by reason of the omission to recite in the bond, the term of time for which the appointment was made. If this be so, it is then, however, urged on the part of the plaintiffs, that the cases cited on this point are cases where the law prescribes the limitation of the office ; either some general law or the particular provisions of the charter under which the appointment was made ; and that all parties arc presumed to act with reference to such statute provisions.

But in my opinion this will not vary the principle. I do not understand the rule to be restricted to cases of offices of *limited duration*. In a highly respectable work, Theobald on Princi-pal and Surety, § 82, the principle is certainly stated much more broadly. It is put in this form : "If a person is surety for the fidelity of another in an office of limited duration, or the appointment to which is only for a limited period, he is not obliged beyond that period ; " embracing thus as well cases of limited appointment to office, as those of offices of limited du-ration. Why should the fact, that the appointment to an office is made one of a limited duration by the acts of the parties concerned, rather than by force of a general law, operate in the least to the prejudice of the sureties, in extending their liability ? I have sought diligently for the reasons which were supposed to influence the court in the decision of the cases I have referred

to. The whole force of the argument sustaining those decisions, as it seems to me, amounts to this ; that all contracting parties must be supposed to act with reference to the actual state of the case as it existed, in relation to the limited duration of the office. They were annual offices, and though not so recited in the bond, still the sureties must be supposed to have contemplated only a liability for this limited period. Apply the same reasoning to the present case. Root was elected, on the 3d of October 1831, cashier of the Amherst Bank, for the ensuing year. The defendants are asked to become sureties for his fidelity in the office to which he has been elected. Was he not elected for a limited term ? Was not this appointment one of a limited duration ? Do not the corporation's records say so ? Then were not the defendants authorized to act upon the matter, and might they not well understand, that in becoming sureties for Root, their liability was one of a limited duration ? How does it differ in principle, as to the rights of the surety, from the cases of sureties for one elected to an' office where the appointment is directed by law to be made annually ? The tenure of this office is at the will of the directors, and they had the right to appoint for such period as in their opinion the interests of the bank required ; subject to the statute provision as to holding over. And cases might present themselves where it would be a much more convenient way of disposing of the incumbent, to provide for a new choice at the next annual meeting, than to proceed to a direct removal. Having exercised the power of appointment, by declaring Root elected cashier for a single year, it became, as respects these parties, as much an office for a year, as though it were made an annual appointment by law ; subject of course to the provision of holding over until a new election took place. I confess I am unable to perceive any sound and satisfactory distinction as to the extent of the liabilities of the sureties, between the case of an appointment of limited duration, made so by the act of the parties previous to the giving of the bonds, and one limited by the statute creating the office, or granting the charter to the corporate body. The inquiry in both cases is the same ; the governing principle in both cases is the same ; viz. :

to what extent did the parties intend to become sureties ? The law says, to the extent to which the tenure of the office was limited, in whatever form that limitation is imposed. We are then to look at the appointment, as it was actually made ; and if we find it was for a limited period, whether that limitation be fixed by statute, or by the act of the appointing power, the liabilities of the sureties are alike limited in duration. Any other rule than this would, in my opinion, leave sureties without that benign protection, which the law has extended to them.

I do not feel the force of the argument, which has been much relied upon in the discussion of this case, that the adjudicated cases referred to really furnish no precedent for this, because they were cases where the limitation was found recited in the bond, or was one created by the law establishing the office. It seems to me that the courts have imposed no such limitation on the application of the great principle which they settled in those cases. The cases themselves happened to present those peculiar circumstances ; and it must necessarily result from the introduction of a new principle, that in its first application it must be to the facts of a particular case. The principle being once established, the question in subsequent cases is not whether they are the same in their details, but whether they are so far analogous, that the principle of law settled in the former case is applicable to the succeeding one. Hence, the number and variety of cases, to which an important leading principle may have been applied, will necessarily be limited in the first instance, but from time to time, as new cases occur, may be expected to be continually enlarging. Now I think that the cases cited fully recognize two important principles as entering into the construction of all contracts made with sureties : 1. That the contract shall be strictly construed with reference to the intent of the contracting party : 2. That a surety for one, who holds an office under an appointment for a limited period of time, does not contract for any liability beyond that period. These, in my view, are the principles of the cases referred to, and they are of general application, independently of any particular mode in which the cases may arise.

But it is strongly urged on the part of the plaintiffs, that the obligation of the sureties, in the present case, is not to be restricted to the terms of the appointment, as disclosed by the record and the actual form of the appointment ; but that we are to look at the statute creating this office, and giving it a more extended duration than one year ; and that from the existence of this statute provision, the law will infer that the sureties intended their obligation to be coextensive with the statute, however limited in point of time may have been the actual formal appointment of their principal.

Supposing the statute susceptible of the construction thus proposed to be given to it, would it be reasonable, on this account, to extend the liability of the surety beyond the terms of the contract as evidenced by the record of the appointment ? Let the principle be tried in another form. The same statute has the following provision as to the bond of the cashier : " The cashier shall give bond, with two or more sureties, to the satisfaction of the board of directors, conditioned for the faithful performance of the duties of the office." Suppose, in such a case, the bond was in the usual form, but with the following additional clause ; " this bond to be in force only for the period of one year from date, and to create no liabilities beyond that period." The principal in the bond remains in office five years, and a defalcation occurs in the fifth year ; the sureties are called upon, and allege in their defence the limitation in their bond. Would it be of any avail for the bank to say in reply — true it is, that your obligation was in terms only for the faithful discharge of the duties of the office for one year ; but there was a statute in force providing that the cashier should continue in office until removed therefrom or another is appointed in his stead, and further requiring the bond of the cashier to be coextensive with the office in duration ; such being the law, it was not competent for the directors to annex any such limitation to your bond ; you cannot avoid the statute liability by any arrangement made between you and the directors, but must be bound to the extent of the statute, as though the bond had been properly taken. Would such a course of reasoning be sanc-

tioned by this court ? I think not. But how does it. differ in principle from the ground urged by the plaintiffs ?

In the view I have taken of the statute on the subject of the appointment of a cashier, it is however unnecessary to consider what would be the effect, as regards the sureties, where the appointment of the principal had been in terms for a single year, against the express provision of a statute fixing the tenure of such office to a term of years. Whether it would be competent for a corporate body to avoid their own acts as illegal, and thus enlarge the liability of the sureties, upon the ground of such alleged irregularity in their own proceedings, would seem to be highly questionable.

But this argument fails, as it seems to me, in the very premises assumed as its foundation. It treats the statute term of the office of cashier as one of a permanent and fixed tenure, or at least as one of more extended tenure than an annual appointment. This, in my view, is giving to the office a permanency that the statute has not attached to it. The *St.* of 1828, c. 96, § 9, enacts that "the directors shall have power to appoint a cashier, clerk, and such other officers for carrying on the business of the bank, with such salaries, as to them shall seem meet, and such cashiers, clerks, and other officers shall retain their places until removed therefrom, or others are appointed in their stead." In the Rev. Sts., c. 36, § 26, this provision is reënacted in these words : " The directors shall appoint a cashier, which cashier shall be removable at the pleasure of the directors." No suggestion is made by the commissioners, that they have introduced any change other than verbal.

It would seem to me, that no office could have less permanency of tenure secured to its incumbent than this same office of cashier, under the statute. It is an office conferred by, and holden at the will of, the directors, at the mere will, or as it may be at the mere whim or caprice, of the directors. As to its duration in point of time, the incumbent may be lawfully displaced from the office at any moment after his appointment. The office being thus held at the will of the directors, they might express that will on the day of his appointment. They had full power to

vacate the appointment, made on the 3d of October 1831, at the expiration of one year. Having at the time of the appointment expressed their intention so to do, and having carried that intention into effect by a new election, made on the 6th of October 1832, the directors, by force of the two elections, made the appointment one of limited duration, and this without violating any express statute provision.

In adopting this construction of the statute, we do not render nugatory the provision, that the incumbent "shall continue in office until removed therefrom, or another is appointed in his stead." That clause will have effect whenever the appointment is unlimited in time, or where there is an omission to proceed to a new election after the time of the original appointment has expired.

I am aware that in the case of the *Dedham Bank v. Chickering,* 3 Pick. 335, it was held that successive reëlections of a cashier, who had been originally appointed for an unlimited period, do not discharge the liability of the original sureties, as to future defalcations. It is unnecessary to call in question the correctness of that decision, as the present case differs materially from it in its facts, and in those facts which may well lead to a different result. In *Chickering's case,* the appointment, under which the bond was given, was unlimited in point of time ; while the appointment, under which the present bond was given, was in its very terms restricted to a year. The question of the construction of these bonds, and the extent of the liability arising thereon, is to be determined by the intent of the parties, as manifested by legal evidence ; and that intent necessarily is to be gathered from the state of facts existing at the time of the execution of the bond. Hence, if the appointment was then an unlimited one, it may be true that sureties, who became such under that form of appointment, might not be discharged of their liability by a subsequent reëlection of the same individual. They have not been misled by the form of the original appointment, nor can such new appointment be alleged by them to have taken place under an original compact between the parties that the office should be annually filled by new elections.

The opinion of the court in the case of *Dedham Bank* v. *Chickering*, presents some remarks strongly sustaining the present defence. The court, after stating that a bond for a liability as surety for an unlimited period would nevertheless be restricted by a recital therein of a limited appointment, add — " we should go even further, and say, that where it appears by the records of the corporation that the office, by their regulations, is an annual one, the bond should be restricted. And all this is founded on the intent of the parties. But the case before us does not seem to be one of that sort. There is nothing in the records or regulations of the bank indicating that the office was annual. There was nothing to make the sureties suppose it was limited to a year." Can such remarks as these be properly and truly made in reference to the present case ? Was there nothing here to lead the sureties to suppose that the appointment was for the term of one year ? Did not a full record to that effect, o the appointment, authorize such a belief ? Did not six successive previous annual elections, made by this bank, indicate that the office was, by their regulations, an annual one ?

It thus appearing by competent evidence, that the original appointment of Root was for one year, the subsequent election, at the expiration of that year, either of the same or another individual, may be relied on by the sureties as a discharge from further continued liability. The new appointment, in such case, is but redeeming, in good faith, the pledge which was virtually given by the directors to the sureties, by the form of the original appointment. The case stands upon grounds that, in my opinion, fully authorize the disposition of it in accordance with what seems to be well settled doctrine as applicable to sureties for those who hold office under appointments of a limited duration.

In my examination of this subject, I find one great principle, which seems to me to be generally as well as firmly interwoven into the code of our laws regulating the liabilities of sureties : They are not to be charged, in any particular, beyond the precise limits and scope of their undertaking. The books abound in cases illustrating the application of this doctrine. I shall in

the close only refer to two of them.   The case of *Boston Hat Manufactory* v. *Messenger*, 2 Pick. 235, where the sureties of an agent were held not liable, because not within the bond, and where, in the opinion of the court as given by the late C. J. Parker, the case of *St. Saviour's* v. *Bostock*, upon which I have commented, was prominently brought forward and much relied on, is of this character.   The principles applicable to cases like the present are also strongly set forth in the ·case of *Ludlow* v. *Simond*, 2 Caines Cases in Error, 1, to which I allude more particularly for the purpose of presenting the views of such distinguished jurists as Chancellor Kent, and Chief Justice Spencer, both then occupying seats on the bench of the supreme court of New York.   Says Kent, C. J , " It is a well settled rule, both at law and in equity, that a surety is not to be held beyond the precise terms of his contract.   This rule is founded on the most cogent and salutary principles of public policy and justice.   In the complicated transactions of civil life, the aid of one friend to another, in the character of surety or bail, becomes requisite at every step.   Without these constant acts of mutual kindness and assistance, the course of business and commerce would be prodigiously impeded and disturbed.   It becomes then excessively important to have the rule established, that a surety is never to be implicated beyond his specific engagement."     Spencer, J. remarks;  "It has been correctly urged, that sureties are favorites of courts of equity, and that those courts will not bind them where they are not strictly bound at law.   It may in the same sense be said, that they are favorites of courts of law, and that there they will not be bound beyond the scope of their engagements."   He adds : " The authorities on the subject  are very uniform ;  they speak a language not to be misunderstood ; and I am fully justified by them in saying that, both at law and in equity, contracts involving the rights of sureties will, so far as respects *them*, receive a more rigid and less liberal construction than between the original contracting parties."

The application of the principles already stated, and of such doctrines as those just quoted, to the facts disclosed in the case

at bar, as it seems to me, forbids our charging these defend-ants with the losses which the plaintiffs may have sustained, through the unfaithfulness of their cashier, at the period when these defalcations are alleged to have occurred. Upon the whole matter, I think the plaintiffs are estopped from saying that the contract of indemnity on the part of the defendants was not originally for an appointment of limited duration ; and that a new choice of cashier having taken place after the expiration of the first year, the sureties were after such election discharged from any further liability. In the correctness of this opinion I have no other doubt, than that which necessarily arises from the fact, that my learned brethren have come to a different result.

*New trial granted.*